JOHNSON *v.* FORTY-SECOND STREET, M. & ST. N. AVE. R. Co.

*(Circuit Court, S. D. New York. January 17, 1888.)*

1. PATENTS FOR INVENTIONS—INVENTION—RAILWAY SWITCHES.
   Letters patent No. 117,198, granted to Thomas Newman July 18, 1871, for an improvement in switches for horse railroads, are for a new and ingenious assembling of known appliances, and are not void because the separate elements of the combination were old.

2. SAME—INFRINGEMENT—RAILWAY SWITCHES.
   The device covered by letters patent No. 117,198, manufactured by complainant, called a pivoted horse-railroad switch, shifted horizontally by the tread of the animals upon an oscillating platform, is infringed by the device of defendant's, combining all the essential features of complainant's, with some slight changes.

In Equity. On bill for injunction.

Action by Albert L. Johnson against the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railroad Company for the infringement of letters patent No. 117,198.

*Samuel A. Duncan* and *Robert H. Duncan,* for complainant.
*M. B. Philipp,* for defendant.

COXE, J. This is an equity action for infringement founded upon letters patent No. 117,198, granted to Thomas Newman July 18, 1871,

for an improvement in switches for horse railroads. The patent is now owned by the complainant. The invention "consists in the combination of an oscillating platform with a movable frog or switch, the platform being arranged within a railroad track so that it can be operated by the weight of the horses or other animals, thereby moving the switch from one track to another." If a driver, approaching the platform from the direction towards which the free end of the switch points, desires to take the right hand track he has but to turn his horses towards the right; their weight upon that side of the platform will move the switch latterly, close the left-hand track, and direct the car upon the right-hand track. If, however, he wishes to take the left-hand track, the natural turn of the horses in that direction will enable him to do so. "In this manner, by simply directing the weight of the animals upon the proper side of the platform, the switch is operated, and held in the desired direction." The claim is as follows:

"The combination of an oscillating platform, arranged for operation by the weight of the draft animals of the car, with a switch, in the manner substantially as herein shown and described."

The grounds of defense are—*First*. That the patent is void for lack of invention; *second*, that the defendant does not infringe; *third*, that the patentee was not the inventor.

The essential feature of the invention is a pivoted horse-railroad switch, shifted horizontally by the tread of the animals upon an oscillating platform. A structure so arranged that the horizontal movement of the switch-tongue responds to the vertical movement of the platform, when trodden on by the draft animals, would seem to be within the claim. There is nothing disclosed by the record which makes it necessary to limit the invention to the identical apparatus or the exact location described in the specification. A large number of patents and exhibits have been introduced to illustrate the prior art. It is not necessary to examine these in detail as the subject may fairly be summarized in a brief statement. At the date of Newman's invention switch-tongues, pivoted as in the patent, oscillating tables and devices for converting vertical to lateral motion were well known. The nearest approximation to the invention is an apparatus, which consists of a rocking platform located between the rails in such a manner that the driver by turning his horses to the left, if he desires to go to the right, depresses by their weight the left side of the platform, and elevates the right side, which forms the switch. The wheels of the car impinging upon the platform are shunted off in the desired direction. This structure was operative, perhaps, but in practice it was clumsy and unreliable and formed an obstruction to the ordinary traffic of the street. Furthermore, there is no evidence that it was ever used, except experimentally. Other exhibits show a laterally-moving switch operated by means of appliances located on the car and worked by the driver. In other words the art discloses several rocking platforms and several horizontally-moving switches, but the structures which show the platform do not show the switch, and those which show the switch do not show the platform. Newman's combina-

tion is not found in the antecedent art.    No one previous to him had produced a practical horse-railroad switch which could be operated by the weight of the draft animals.    Certainly no one had combined a tip-table with a horizontally moving switch-tongue.    Of course the accusation that the separate elements of the combination were old is of no moment.    It would be as irrational to charge an author who has produced a sentence of surpassing power and beauty with plagiarism, because the words which he employs have long been found in the lexicon, as to overthrow a patent for a new and useful combination upon the ground that its separate elements are old.    By an ingenious assembling of known appliances this inventor solved the problem the solution of which had been sought for in vain through a long series of years.    Although the goal was frequently in sight, it had never been reached; always some necessary requisite to success was lacking.    The practical disentanglement of the difficulty was left to Newman.    He made that a success which before had been tentative and rudimentary.    In judging of the invention care should be taken not to underestimate its value, because the apparatus, now that we have seen it work, seems so plain and simple. The test to which this patent has been subjected,—the test which is usually applied to all contested patents,—is certainly severe, and is often misleading and deceptive.    The defendant assembles every similar device, description, or suggestion in the particular art not only, but also in analogous, and even in remote arts.    Everything which has the least bearing upon the subject is brought in and arranged by a skillful expert in an order of evolution which resembles most closely the invention which is the subject of attack.    Having thus reached a point where but a single step, perhaps, is necessary to success, and knowing from the inventor exactly what that step is, the expert is asked if the patent discloses invention, and, honestly, no doubt, answers in the negative.    There is always the danger, unless care is taken to divest the mind of the idea added to the art by the inventor, that the invention will be viewed and condemned in the light of ascertained facts.    With his description for a guide, it is an easy task to trace the steps from the aggregation to the invention.    When it is remembered that before Sir Humphrey Davy made his safety-lamp, wire gauze, and lanterns provided with perforated tin cylinders, were well known, it seems, in the light of the present, as if the idea of substituting the gauze for the perforated tin, being apparently so simple, might have occurred even to a skilled mechanic.    So, too, moving the eye from the head to the point of a needle seems, in this age, but a trifling thing; and yet, to the inspiration of genius which suggested these changes we are indebted for two inventions of inestimable value. Carrying the mind, therefore, back to 1871, and judging his combination in the light of what was then known, it is thought that Newman's contribution to the art places him upon the plane of the inventor.    What he did was not so obvious a change that it would have occurred to a skilled artisan.

The defense founded upon the New Orleans testimony has been carefully considered, but it is insufficient to defeat the patent.    What New-

man took from McGloin he might have taken from any other mechanic. Indeed, after having conceived the idea, and embodied it in practical form, he might have advertised for a better arrangement for transferring the motion of the table to the switch, so as to give it a lateral movement, without in the least endangering his right to a patent. The facts are no stronger for the defendant than in each of the following cases, where similar proof was held unavailing. *Agawam Co.* v. *Jordan*, 7 Wall. 583, 606; *Yoder* v. *Mills*, 25 Fed. Rep. 821; *Gun Factory* v. *Warner*, 1 Blatchf. 258, 278; *Blandy* v. *Griffith*, 3 Fish. Pat. Cas. 616. There is little doubt that the defendant infringes. Its switches are identical with the complainant's, except that the apparatus underneath the platform is somewhat different. The platform, too, is wider; the center is stationary; and a part is located outside the rails. It may as well be conceded that the defendant's structure is an improvement upon the complainant's; but that the main idea—the essential feature of the invention—is found there, is equally self-evident. A center strip of the Newman platform might be made stationary,—as in the Sanson exhibit, for instance,—the platform might be widened, and the machinery for moving the switch changed, without departing from the spirit of the invention. The conviction cannot be avoided that the defendant has appropriated the essence of the invention, and that the changes which have been introduced are wholly insufficient to take its structure out of the claim of the patent.

The complainant is entitled to the usual decree.