## WAHL CLIPPER CORPORATION v. ANDIS CLIPPER CO. et al.

No. 4939.

Circuit Court of Appeals, Seventh Circuit.

July 20, 1933.

Max W. Zabel and Greek Wells, both of Chicago, Ill., for appellant.

Warren G. Wheeler, S. L. Wheeler, and Leverett C. Wheeler, all of Milwaukee, Wis., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

Appellant brought this suit to recover damages and restrain further infringements of claim 7 of its patent No. 1,832,437, which covers vibrators of a type used for massage and similar purposes. The validity of the claim is the only question involved, for infringement is not disputed if the claim is valid.

At the conclusion of the trial, the court disposed of the case saying: "Claim 7 is held invalid for aggregation."

It supplemented this statement by formal findings of fact, the substance of which was that the patent was owned by appellant; that claim 7 only is involved; that appellee Andis Clipper Company manufactured and appellee Beauty Appliance Corporation sold the product (Exhibit 7) within the Eastern District of Wisconsin after appellant's patent was issued; that claim 7 relates solely to an aggregation of an old form of vibrator mechanism with an old form of casing; that the form of casing defined by claim 7 was designed by Andis, president of appellee Andis Clipper Company, before the date of the invention claimed for the patent in suit; that the devices of patent No. 1,682,447, which covered both hair clipper and vibrator, antedated the patent in suit; that in the light of the prior art the adaptation of the Andis casing to a well known vibrator mechanism was a matter of mechanical design perceptible to any person skilled in the art; and that claim 7 required merely the non-inventive adaptation of prior art tool handles to the operator's hand.

As conclusions of law, the court found that claim 7 is void for lack of invention and is void for anticipation by the device manufactured by Van Osdel.

In the application for appellant's patent, Wahl, the patentee, described his invention and its purposes rather fully. He said:

"My invention relates to vibrators * * *.

"It is a purpose of this invention to provide a device of this character which shall be easy to manipulate or hold without the provision of an extended handle.

"* * * to provide a vibrator * * * with a container or housing that may readily be grasped by the hand of the operator and firmly held so that there is no danger of it twisting out of the operator's hand and so that it may be properly directed to give the most advantageous results.

"* * * to provide a vibrator * * * with a container which is adapted to serve as a handle and which container may be readily detached in sections from the vibrator to permit access to the interior thereof.

"* * * to provide in a device of this character novel means for resiliently supporting the movable armature on the electro-magnet."

After describing in detail the various parts of the vibrator, he said:

"By having the weight distributed lengthwise of the casing and having the vibrator carried by the armature adjacent the front end of the casing so as to have the work pressure and maximum reaction at the one end of the casing in order to cause a turning movement in a plane lengthwise of the casing, the vibration at the other end is materially lessened. By having the tail piece in a generally diagonally opposite position with respect to the place of pressure application, the turning movement can be opposed by the smaller fingers of the operator's hand with but little of the tiring pounding or vibration upon them.

"The heavy core of the armature together with the winding and the housing makes a heavy mass that is not subject to an objectionable reaction due to the vibration of the light armature 14 and the massage tool carried thereby. Furthermore, in view of the manner in which the armature is mounted, heavier pressure on the massaging device brings the armature closer to the electromagnet and thus increases the magnetic pull so that the degree of vibration obtained is substantially increased at will without adjustment."

The novelty of claim 7 resides in the structure of the casing, the location of the vibrator in relation to the casing, and the distribution of weight in the electrical mechanism.

Vibrators were, of course, old. Generally speaking, a vibrator necessitates four elements: (1) A casing wherein the electromagnetic means for actuating the vibrator is housed; (2) said electro-magnetic means; (3) a carrying armature located either at the end of the casing or extending perpendicularly from the casing; and (4) a handle for the operator to hold.

It is the theory of appellant that the novelty upon which his claim of invention is predicated lies in the particular type of its structure, not in the introduction of new elements, nor in the elimination of old elements of the combination. In other words, asserted inventibility is traceable to the particular form, weight, and size of the casing, coupled with the position of the vibrator in relation to the casing, the distributed weight of the vibrator actuator, and the shaping of the casing so as to use it as a handle.

Claim 7, divided into its elements showing the limitations of each element, reads as follows:

An electro-magnetic vibrator having:

An elongated casing provided therein with electro-magnetic means for actuating a vibrator carrying armature,

Said electro-magnetic means being so arranged as to distribute the weight throughout the length of the casing.

An armature resiliently mounted in the casing whereby to swing toward and away from the front of the casing under the influence of said electro-magnetic means;

Said armature carrying a vibrator at one end of said casing whereby the pressure of the vibrator against the work exerts a turning movement tending to rotate said casing and said casing having substantially diagonally opposite the vibrator carrying end of the armature

A tailpiece forming a reduced end extension flush with the back of said casing which serves as a grip to prevent turning of the casing.

It will thus be seen that the combination consists of four elements: (a) A casing; (b) electro-magnetic means for actuating a vibrator; (c) an armature carrying a vibrator; and (d) a tailpiece which is a part of the casing and serves as a handle. Each element is modified by limiting clauses which narrow the claim as a whole. For example, the electro-magnetic means which constitute the heavier part of the mechanism must have its weight distributed throughout the length of the casing. The armature must be resiliently mounted in the casing so as to swing as spec-

ified. Likewise, the armature must be so constructed as to carry a vibrator at one end of the casing so that the vibrator will react to the action of the vibrator in a certain described way. The casing must be so constructed as to have diagonally opposite the vibrator carrying end of the armature a tailpiece which tailpiece serves as a grip for the holder, and the casing at this part is somewhat reduced in size, but the extension is flush with the back of said casing.

Appellees contend that the combination is not patentable for two reasons: (a) It is but an aggregation of old elements; and (b) it is anticipated by the prior art.

In the prior art there were hair clippers wherein the casing served both as a handle and housing mechanism. Appellee, Andis Clipper Company, had used a casing quite similar to the casing of the patented article in its hair clipper prior to appellant's application for the patent. Van Osdel, at an early date, invented a hair clipper. He made use of a casing at one end of which was the electro-magnetic mechanism for actuating the clipper. Near the end, but horizontal thereto, was also a vibrator attached to the same electro-magnetic mechanism.

The precise question involved is whether Wahl did more than merely take appellee's (Andis Company's) casing and adapt Van Osdel's idea of locating his vibrating instrument near the end of the casing and connect it with the electro-magnetic mechanism housed by the casing. Perhaps it would be more accurate to inquire, Did Wahl do more than unite an old form of casing such as appellee (Andis Company) used in its hair clipper and locate a vibrator thereon as it had been previously positioned, and was that "more" merely the exercise of mechanical skill?

Wahl did more than utilize several old elements in a combination wherein no new or changed results occurred. His endeavor and his result was so to construct the casing and so position the vibrator and so weight the electro-magnetic means that the influence of each on the other produced a new or at least a better result.

Whether the combination described by claim 7 is patentable invention rather than an aggregation depends upon the existence of a fact basis for patentee's assertion that his arrangement and construction of the four elements thereof are novel and their coaction produced desirable results. Abstractly or theoretically, the inventor has presented a case of patentable combination and not an aggregation.

By eliminating that which is conceded, it is easier to apply the test to this vital question. Wahl made use of four elements in his combination. They were all old in the art. Each served the same purpose for Wahl as in the prior art. The electro-magnetic vibrator art is in the same field as the electro-magnetic hair clipper art.

What then did Wahl do to justify his inventorship pretensions?

Appellant's location of an armature and the vibrator *in the combination* was novel. It was not new as a single element. It was not new and would not have constituted invention merely to change the location of this one element of the vibrator. But it was new so to locate said element as to lessen its turning tendency when applied to the body. Making a handle out of the tailpiece of the casing was not new. But making one of the form specified by Wahl, which would make more effective and certain the grip and lessen the force on the operator's hand, was new. Doubtless it was neither novel nor patentable merely to distribute the weight along the electro-magnetic mechanism, but to distribute it and house it in the casing, one end of which became a handle, in such a way as to secure coaction of parts and thereby make it easier for the user to operate the device and at the same time add to its effectiveness and the comfort of the application, was new. The defense of aggregation must therefore fail.

What of its patentability in view of the existing prior art? Appellees assert, and the court found, that Wahl's contribution did not rise to the dignity of invention. On the other hand, appellant asserts and the Patent Office sustained its view that invention was lodged in the combination.

In approaching the determination of this question, which unfortunately is not solvable with any mathematical nicety nor certainty, we are conscious that every decision must after all be quite arbitrary. The court must indulge in some speculation as to the value of the patented article, as well as in the likelihood of one skilled in the art being readily able to solve the problem involved in the patent when presented for solution.

What is inventive genius? What is mechanical skill? We apprehend the terms are used for want of better ones, and then, too, they suggest, if they do not define, what the writer has in mind. Moreover, the words are of comprehensive and elastic meaning, the use of which is seldom helpful but nevertheless quite tempting. What is genius? What, an inventive genius? May only an inventive

genius receive a valid patent? Instead of comparing the mental activities (and eccentricities) of genius and the "mechanic skilled in the art," it would seem safer and more accurate to study the product itself and, if possible, ascertain the verdict of the public—the ultimate beneficiary of the contribution. In most instances, the judgment of those who pay their money to secure the benefits of the patented article is truer and better than the opinion of experts or the speculations of an arbitrator. Inasmuch as experience is more reassuring than theorizing, and history more certain than prophecy, so the test of public approval, if uninfluenced by detracting factors, must afford the weightiest proof obtainable determinative of invention. In short, in construing the patent statute, which was enacted to promote the useful arts, it is more important to study those developments of the art which are bright with use in the channels of trade than to delve into abandoned scrap heaps and dust-covered books which tell of hopes unrealized and flashes of genius quite forgotten. The somewhat meaningless terms "inventive genius" and "mechanical skill" must be clarified by an examination of the article itself, and if the improvement be unusual, or if there be doubt, and the public has given its tribute, the judge should accord to the creator of the article the title of inventor.

In the instant case, the hopes of the inventor were justified by the users. Appellant's vibrator business increased about 1,500 per cent. in two years. Appellant had been selling vibrators for fourteen years before putting the patented article on the market. Its average sales were approximately 1,000 vibrators per year. Its new vibrator appeared on the market in March, 1928. That year appellant sold 1,500. The second year it sold 10,500 and the next year, 21,000. In the last year it sold over 30 per cent. of all the vibrators purchased in the country. The number of vibrators its licensee sold does not appear in the record, but its sales should be added to the figures and percentages above stated.

In appraising this evidence, we appreciate the need of close scrutiny to ascertain whether increased sales were attributable to the merits of the device (in other words, is the public paying tribute to the inventor?), or whether such increased sales are due to advertise-ment (there is doubtless advertising genius as well as inventive genius), to an intensive sales drive, a consolidation of competing industries, an abandonment of the manufacture of an old article, the happy use of a trade-name, a sharp revival of business, or any other means which an alert management of an industry successfully adopts to sell a nationally used article.

There are many cases where this evidence is of little or no value, because not an expression of public approval. There is likewise difficulty in confining its use to doubtful cases rather than in creating doubtful cases.

The record before us is barren of any evidence which tends to lessen the persuasiveness of this immediate and general adoption of Wahl's patented vibrator. This vibrator was offered to the public at the same price and side by side with appellant's old type with the results previously stated.

But this evidence of the public's judgment is not the only persuasive evidence in the record. One of appellant's competitors sought and secured a license to make and sell vibrators covered by claim 7. More persuasive evidence than the action of competitors in taking licenses and paying substantial royalties for the privilege of selling the patented article can hardly be found.

The action of appellee (Andis Company) too, is confirmatory of the conclusion here reached. After appellant's vibrator was placed on the market, appellee (Andis Company), without securing a license from the patentee, made and put on the market its vibrator which is a clear infringement of the patent. In explaining its action in thus changing its vibrator, appellee (Andis Company) argues that it was within its legal rights in so acting. Conceding for the moment its legal rights, the question exists, Why change its type of vibrator unless the article copied possessed merit? And why was not the change made earlier if the article possessed merit and its production was obvious to a mechanic skilled in the art?

Further discussion of the question seems unnecessary. Our conclusion is that claim 7 of the Wahl patent is valid and infringed.

The decree is reversed, with directions to proceed in accordance with the views here expressed.