---

34 C.C.P.A.(Patents)

## In re HOLT.

### Patent Appeal No. 5303.

Court of Customs and Patent Appeals.

June 17, 1947.

Joseph P. Moran, of New York City (Richard G. Radue, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'CON-NELL, Associate Judges.

BLAND, Acting Presiding Judge.

The Primary Examiner of the United States Patent Office rejected claims 7, 8, 9, 10, 15, 16 and 18 of appellant's application for a patent relating to a floor surfacing machine, and upon appeal the Board of Appeals affirmed the action of the examiner. Appellant has appealed here from the board's decision.

Claims 11, 12 and 13 were allowed by the examiner.

We, as did the board, regard claims 9, 15 and 18 as typical of the appealed subject matter and they read as follows:

"9. A floor surfacing machine comprising a portable wheeled housing, a rotary surfacing element rotatably mounted in opposite sides of said housing, said rotary surfacing element consisting of a metallic drum having a cylindrical peripheral surface provided with a slot arranged lengthwise of and obliquely to the drum axis, a cushioning devise for the peripheral surface of said drum comprising a backing sheet of substantially rigid material shaped to fit around and conform to the continuous peripheral surface of the drum and a continuous layer of resilient material shaped to fit around the peripheral surface of and cemented to the outer side of said backing sheet, said backing sheet and layer of resilient material having spaced oblique edge portions in line with said drum slot, and said cushioning device being sufficiently flexible so that by separation of said spaced oblique edge portions said cushioning device can be made to fit circumferentially over said drum when mounted in said hous-

ing, means for detachably securing said cushioning device to said drum with said drum mounted in said housing, a sheet of abrasive material arranged to fit around said layer of resilient material with its ends extending into said drum slot, and means within said drum for holding the ends of said sheet of abrasive material taut.

"15. A rotary surfacing element comprising a rotary drum having a slot extending lengthwise of the peripheral surface thereof and obliquely to the drum axis, a cushioning device for said peripheral surface comprising a metallic backing sheet sectioned along an axial line and shaped to fit around and conform to said peripheral surface and a continuous layer of resilient material cemented to the outer side of said backing sheet substantially throughout its extent, said backing sheet and layer of resilient material having spaced oblique edge portions in line with said drum slot, means on said drum for detachably engaging circular edge portions of said backing sheet for holding said cushioning device in position on said drum, a sheet of abrasive material fitting around said layer of resilient material with its ends extending into said drum slot, and means within said drum for holding the ends of said sheet of abrasive material taut.

"18. A demountable cushioning member for a rotary surfacing drum having a slot in its peripheral surface extending obliquely to the drum axis, which comprises a pair of oppositely arranged substantially semi-cylindrical thin metallic plates having abutting straight edge portions and spaced edge portions extending obliquely to the axis of the cylinder, and a continuous layer of resilient material cemented to the outer sides of said metallic plates substantially throughout their extent and having spaced edge portions in line with the obliquely extending edge portions of said plates."

The claims here on appeal should be divided into two groups: (1) claims 7, 8, 15, 16 and 18 are drawn to the demountable drum; (2) claims 9 and 10 are drawn to define the structure of the drum when combined with the other well-known elements of floor surfacing machines, such as portable wheeled housing, etc.

The invention relates particularly to the construction of a rotary abrasive drum in floor surfacing machines. Such machines are manually moved over the floor, which is resurfaced by the abrading action of the high-speed drum which is clothed with a sheet of sand paper. Appellant states that the invention is concerned only with the construction of the rotary drum assembly and mounting for such machines.

The record discloses that drums of this character ordinarily consist of hollow metal cylinders closed at the ends by plates and are rigidly mounted on an axle which is journalled in depending side plates of the housing at a point on one side close to the end plates of the drum so that one side of the drum will cut close to the baseboards of a room. Owing to the high speed of the revolving drum it is necessary that this character of device be in dynamic balance at all times, otherwise "chatter marks" will appear on the floor surface. It is important that the sheet of sand paper have the right degree of tightness on the roll and that where the meeting edges join there not be an open space straight across the drum.

Appellant's invention consists of constructing a rotary drum which possesses among its desirable features those above mentioned and has the special virtue of being so constructed that not only may the sand paper be quickly substituted for that which becomes worn but the resilient layer underneath the sand paper, which may be damaged by nails or the like, may be removed from the roller and a new one substituted without sending the whole assembly to a shop.

In appellant's device a layer of somewhat resilient material (sponge rubber preferred) is cemented to two separate, substantially semi-circular, thin, rigid, metal backing plates shaped to fit the periphery of the drum, each of which plates has a straight edge portion and an oblique edge portion. The two plates have a hinge action so that when they are spread apart at the open sides the whole circular unit can readily be placed over the drum base. At the point of meeting on the drum of the two ends of the sand paper there is an opening, extending across said drum obliquely to the axis of the cylinder, for the receipt of the sand

paper. The paper is held tightly in the device with the aid of "a pair of parallel knurled rolls journalled in said drum end walls adjacent said slot and having flattened surface portions cooperating to form a slot therebetween within said drum substantially parallel to said drum slot." (Allowed claims 11, 12 and 13 are drawn to cover the limitation quoted next above and do not contain many of the limitations in the claims on appeal.)

The device is equipped with end plates and flanges which securely hold the cushioning unit in the desired position on the drum.

The references relied upon by the Patent Office tribunals are: Webster 147,534 Feb. 17, 1874; Hapgood 238,284 Mar. 1, 1881; Fowler 700,189 May 20, 1902; Wattles 781,925 Feb. 7, 1905; Dobyne 999,436 Aug. 1, 1911; Cangen 1,445,295 Feb. 13, 1923; Emmons 1,836,367 Dec. 15, 1931; Weidrich 1,904,893 Apr. 18, 1933; Ducato 1,973,307 Sep. 11, 1934; Knowlton 2,146,302 Feb. 7, 1939; Reid 2,278,564 Apr. 7, 1942.

The examiner's rejection is confined to the following statement:

"Claims 7, 8, 9, 10, 15, 16 and 18 were rejected as defining nothing more than an unpatentable collection of details of abrasive machine structure old in the art.

"Claims 9 and 10 were rejected as defining nothing patentable over patents to Reid or Weidrich in view of patents to Emmons and Webster.

"Claims 15 and 16 were rejected as defining nothing patentable over patent to Emmons especially in view of patent to Ducato."

The examiner then discussed some of the references briefly and arrived at the conclusion that, for the reasons stated, all the claims were unpatentable over the prior art.

The Board of Appeals discussed the references and grounds of rejection somewhat more in detail and held: "* * * we find that every feature recited in the claims is shown in this art [cited by the examiner] and their assembly in a unitary machine does not involve invention."

The board, as does the Solicitor for the Patent Office, pointed out the features of

the prior art which the tribunals held disclosed all the limitations of the claims. In this court the solicitor urges that he has shown in his brief that all the separate limitations of the claims are fully disclosed in the prior art and argues that the board correctly found that assembling these elements into one structure does not involve invention. The appellant earnestly urges that certain features of the claims are not disclosed in the prior art and that such features are important.

There are so many references and so many features of each involved that to discuss them in detail here would unduly lengthen this opinion.

After a painstaking examination of the numerous references cited we think it is substantially true to say that they show the various structural elements in the appealed claims, although such showing as to some of the elements in some of the claims is not very clear. Obviously, complicated modifications would be required to adapt one prior art structure to another in order to accomplish what appellant has accomplished.

It makes little difference, as we view the issue, whether any element is new or old if the combination of the elements into a completed structure involves invention. See Leeds & Catlin v. Victor Talking Machine Co., 213 U.S. 325, 332, 29 S.Ct. 503, 53 L.Ed. 816. It is well settled that a combination of old elements which produces new, useful and unobvious results may involve invention and constitute patentable subject matter. This question always depends upon the particular facts of the case under consideration.

The rule has been so often stated and is so well understood as to call for no citation of authorities that the assembling into a new article of a number of good features of the prior art may involve invention and be of such utility and produce such unexpected results as to be patentable. The conception of a structure of that character may be the invention, even though the assembling of it into a united structure would involve little more than mechanical skill after such conception. Hayes, A Definition of Invention, 1941, p. 17; Hobbs v.

Beach, 180 U.S. 383, 21 S.Ct. 409, 45 L.Ed. 586; In re Hofmann, 95 F.2d 257, 25 C.C. P.A. (Patents) 975; In re Bencker, 96 F. 2d 326, 25 C.C.P.A. (Patents) 1097.

We think appellant, by his combination of the elements of the structure defined by some of the claims has made an invention, but we are of the opinion that the sole invention disclosed in the application resides in the structure of the rotary drum as defined by claims 7, 8, 15, 16 and 18.

Appellant is admittedly the first one to construct a machine of this character which will enable a quick change of the resilient layer and the sand paper without removing the drum from the machine. It is true that the prior art discloses a split plate construction somewhat similar to that of appellant's in a shoe repair abrading machine, such as that disclosed in the Ducato patent. In that patent, however, the same problem did not confront the inventor as in the instant case. Ducato's drum, which is similar to that of appellant's and which drum is the holder of the abrasive material, is supported at one end only by a spindle. The abrading material is easily affixed to the plate by slipping the same over the end of the holder. The abrasive sheet is wrapped around the cushioned sleeve. The use of this machine obviously does not involve the same character of problems involved in the use of a floor surfacing machine. The sand paper is not required to be as permanently affixed or as accurately adjusted. The strain is not so great on this character of machine as it is on that of appellant's.

■ Appellant contends that the Ducato patent and other references relating to shoe repair machinery are non-analogous art and should not have been resorted to by the Patent Office in the rejection of the appealed claims. We are in disagreement with appellant in this respect. Such references are in the abrading art and involve a rotary drum, but the fact that they do not involve the same problems as do floor surfacing machines is a matter for consideration in determining the obviousness or lack of obviousness in constructing a device like that at bar.

In Re Burrows, 40 F.2d 1011, 17 C.C.P. A. (Patents) 1254, involving claims relating to a refrigerated display counter, the question of non-analogous art was passed upon and we there relied upon the holding of the Supreme Court in Potts v. Creager, 155 U.S. 597, 15 S.Ct. 194, 198, 39 L.Ed. 275, in which the court said:

"Indeed, it often requires as acute a perception of the relations between cause and effect, and as much of the peculiar intuitive genius which is a characteristic of great inventors, to grasp the idea that a device used in one art may be made available in another, as would be necessary to create the device de novo. And this is not the less true if, after the thing has been done, it appears to the ordinary mind so simple as to excite wonder that it was not thought of before. The apparent simplicity of a new device often leads an inexperienced person to think that it would have occurred to any one familiar with the subject; but the decisive answer is that, with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to any one before. The practiced eye of an ordinary mechanic may be safely trusted to see what ought to be apparent to every one. As was said by Mr. Justice Bradley, in Loom Co. v. Higgins, 105 U.S. 580, 591 [26 L.Ed. 1177]: 'Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result never attained before, it is evidence of invention.'

"As a result of the authorities upon this subject, it may be said that, if the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old device produce a new result, it *may* at least involve an exercise of the inventive faculty. Much, however, must

still depend upon the nature of the changes required to adapt the device to its new use." [Italics quoted.]

It seems to us that appellant, by building his structure in the manner defined by the appealed claims has made such a useful improvement in the art, under the circumstances and facts heretofore stated, that it should not be held that he had done that only which would be obvious to the skilled mechanic without the exercise of inventive genius and that he is entitled to a patent as a reward for his labors, and if there were any doubt about it the record proof of commercial success hereinafter referred to supports our conclusion.

The situation which confronts us here is quite similar to that which was present in the case of In re Deakins, 96 F.2d 845, 849, 25 C.C.P.A. (Patents) 1153, in which we said: "We have carefully examined the references for a suggestion of appellant's combination and the new and useful results obtained thereby, but have found none. Of course, if the references are examined in the light of appellant's disclosure, the solution of the problem confronting appellant seems simple. A problem solved is no longer a problem, and one is prone to overlook the fact that it ever existed."

It seems to us that by the assembling of the elements defined by the different limitations in the claims which we think are allowable appellant has brought a new functional relationship between the parts and that the different elements coact with each other in such a manner as to bring about a new and unobvious result. In view of what we have hereinbefore said we think it proper to say that the Patent Office tribunals should have viewed the claims at bar more objectively and less subjectively. See Sinclair & C. Co. v. Interchemical Corporation, 325 U.S. 327, 65 S.Ct. 1143, 89 L. Ed. 1644; "The Problem of Invention in the Law of Patents," by Anthony William Deller, Journal of the Patent Office Society, November, 1946, Vol. XXVIII, No. 11, p. 797; Report of the National Patent Planning Commission, 1943.

Holt submitted an affidavit to the Patent Office in which it is shown that the Holt Manufacturing Company (which manufactures the rotary drums defined in the instant application) has met with great commercial success and that during the years 1941, 1942 and 1943 over twelve hundred floor surfacing machines incorporating said drum construction have been sold, with a total sales value of over $300,000.00, in many instances under competitive bids with other machines, and that said commercial success was due to the rotary drum structure and particularly to the ease and low labor cost of replacing the cushioning elements of the rotary drum. The affidavit discloses that during the said period of time there have been received from customers over 700 floor surfacing machines of various manufacturers incorporating rotary drums, in which the resilient cushioning element was cemented directly to the drum, for replacement of the same with rotary drums having demountable cushioning elements described in the application at bar.

Evidence of commercial success in situations like that at bar, where the question of the presence of invention is in controversy and where there are differences of opinion such as prevail here between those of the Patent Office and this court, should be an important factor to consider. A case particularly in point on this subject is Wahl Clipper Corporation v. Andis Clipper Co. et al., 7 Cir., 66 F.2d 162, 165, which involved the validity of a combination claim, the elements of which were old. Circuit Judge Alschuler, speaking for the Seventh Circuit, said, among many other pertinent statements, the following: "* * * Instead of comparing the mental activities (and eccentricities) of genius and the 'mechanic skilled in the art,' it would seem safer and more accurate to study the product itself and, if possible, ascertain the verdict of the public—the ultimate beneficiary of the contribution. In most instances, the judgment of those who pay their money to secure the benefits of the patented article is truer and better than the opinion of experts or the speculations of an arbitrator. Inasmuch as experience is more reassuring than theorizing, and history more certain than prophecy, so the test of public approval, if uninfluenced by detracting factors, must afford the weight-

iest proof obtainable determinative of invention. In short, in construing the patent statute, which was enacted to promote the useful arts, it is more important to study those developments of the art which are bright with use in the channels of trade than to delve into abandoned scrap heaps and dust-covered books which tell of hopes unrealized and flashes of genius quite forgotten. The somewhat meaningless terms 'inventive genius' and 'mechanical skill' must be clarified by an examination of the article itself, and if the improvement be unusual, or if there be doubt, and the public has given its tribute, the judge should accord to the creator of the article the title of inventor." See also In re Peddrick, Jr., et al., 48 F.2d 415, 18 C.C.P.A. (Patents) 1161, 1166.

It is not enough for the Patent Office tribunals to say they have found every element in the prior art and therefore the application should be rejected, and, in fairness, they have not exactly said that this is the ground of rejection, but they did say, as before stated, that all the elements are found in the prior art and that the assembling of them together did not involve invention. The latter part of the statement always involves a question of opinion and since it seems impossible to definitely establish a boundary line between invention and lack of invention in cases like the instant one much uncertainty must necessarily exist.

In our opinion, this is one of the instances where the assembling of the various elements (whether old or new) involved the exercise of invention. For the reasons herein stated, we think that claims 7, 8, 15, 16 and 18 should have been allowed.

Claims 9 and 10, as before stated, call for combining the sub-combination of the drum, which is defined in the other appealed claims, with the other elements of a floor surfacing machine, such as a wheeled housing. The Solicitor for the Patent Office has the following to say concerning the claims in general, but it would seem to be more proper and pertinent when applied to claims 9 and 10: "Merely in passing, because no ground of rejection has been applied on the theory of old combination,

with the invention, if any, residing in a novel element per se, it may be noted that novelty in one or more elements does not necessarily render a combination including such novel element patentable. In re Weber, 88 F.2d 489, 24 C.C.P.A. (Patents) 1040; In re Pineo, 156 F.2d 173, 33 C.C.P.A. 1148, and authorities therein cited."

The sub-combination defined by all the claims except 9 and 10 have inventive features, but this fact does not lend the element of invention to the whole machine. As we have hereinbefore held, we think the sub-combination claims involving the rotary drums are inventive but we do not think that there is such coaction or new, unexpected, or useful results flowing from their combination with the remaining portions of a floor sanding machine as to warrant a holding that such claims should be allowed. It is, of course, settled law that one may have a patent for a combination or a combined machine which includes a patentable sub-combination. Special Equipment Co. v. Coe, 324 U.S. 370, 65 S.Ct. 741, 89 L.Ed. 1006.

We agree with the general principle stated by the solicitor that in the instant case the invention, if any, rests in the sub-combination of the rotary drum elements as defined by claims 7, 8, 15, 16 and 18. This sub-combination, when put into the ordinary floor surfacing machine, may perform better work than any machine disclosed in the prior art, but it would seem obvious that such result is brought about by the improvement in the sub-combination and that it acts in the whole combination in the same manner as the drums of the prior art. No invention is seen in combining the sub-combination of the rotary drum with the other elements of the surfacing machine provided for in claims 9 and 10.

It might be said in passing that neither the board nor the examiner rejected the claims, 9 and 10, upon the ground that they related to an old combination or an exhausted combination. They merely held that in view of the prior art it did not amount to invention to do what appellant has done as defined by all the appealed claims.

The case of In re Weber, 88 F.2d 489, 24 C.C.P.A. (Patents) 1040, cited by the solicitor, is in point only in that it holds that the patentable novelty may reside in a motor rather than in a combined fan and that the claims were properly rejected upon exhausted combination. There is no such ground of rejection here, but in the case of In re Pineo, 156 F.2d 173, 175, 33 C.C.P.A. (Patents) 1148, we discussed at some length the law relating to this phase of the case. The Pineo case involved combination claims to a flickering beam spectrophotometer and a sub-combination and the claims had been rejected on the ground of old combination. We said:

"The law is so well-settled on this question that it would not be helpful here to belabor the issue. It seems clear to us that the examiner and the board were correct in holding that even though the drive mechanism element was new and in itself involved invention this fact alone would not avoid the settled doctrine that if invention rests in an element of a combination an applicant is not entitled to a combination claim involving that element unless the element coacts with the other elements in such a way as to bring about a new, unexpected and beneficial result flowing from such new combination.

"There is not any new coaction between the element here stressed by appellant and the other parts of the combination defined in the claims. The new element functions in the old way and even though it may make for an improved machine, the invention, if any, rests clearly in the new element and should have been so defined.

"The only improvement that appellant has made, irrespective of whether it is inventive or not, is in the cam mechanism and in nothing else. [Citing authorities.]"

From the foregoing, it follows that the decision of the Board of Appeals should be modified. It is affirmed as to its holding as to claims 9 and 10, and reversed as to claims 7, 8, 15, 16 and 18.

Modified.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.