29 C.C.P.A. (Patents)

## In re GREIDER et al.

### Patent Appeal No. 4574.

Court of Customs and Patent Appeals.

June 1, 1942.

Rehearing Denied July 3, 1942.

George W. Mills, Jr., of Lockland, Ohio (Albert F. Robinson, of Lockland, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 1 to 13, inclusive) in appellants' application for a patent for an alleged invention relating to roofing and siding material, such as shingles.

Appellants' application discloses a prepared shingle comprising a fabric foundation saturated with bituminous material, a layer composed of cork particles of substantial size, and a layer of weather resisting grit surfacing material. The layer of cork granules serves to provide thermal insulation.

The phrase "particles of substantial size" is defined in appellants' application as meaning particles which will not "pass through a thirty-five (35) mesh screen."

The application states: " * * * There is a critical minimum size for the cellular particles, but no maximum size, in order for them to function to provide thermal insulation."

Claims 1 and 7 are illustrative of the subject matter claimed. They read:

"1. A shingle comprising a bituminized fibrous foundation having cellular particles of substantial size adhesively applied to one face thereof to provide a thermal insulating layer, an adhesive coating over the thermal insulating layer, and weather resisting grit material partially embedded in the adhesive coating.

"7. A shingle comprising a bituminous fibrous foundation, a bituminous coating applied to one side of said foundation, an insulating layer of cellular particles of substantial size adhered to but unsaturated by the coating, and a layer of weather resistant material adhesively secured over the insulating layer."

The references are: Douthett, 2,021,716, Nov. 19, 1935; Miller, 2,047,741, July 14, 1936; Miller, 2,047,742, July 14, 1936; Harris, 2,104,384, Jan. 4, 1938; Harshberger, 2,133,988, Oct. 25, 1938.

The patent to Douthett discloses a roofing material comprising a felt base on which is placed an adhesive in which are embedded weather resistant granular particles. The written specification makes no reference to the size of the granules other than, in describing the prior art, it is stated that the "surfacing material" consists of "comminuted slate, slag or the like." However, in the drawings of the patent the granular material is depicted as being of a size apparently larger than would pass through a "thirty-five (35) mesh screen."

The patents to Miller disclose a saturated felt base provided with bituminous undercoating and overcoating. A layer of non-mineral granules, which may be ground coke or cork, or sawdust, is provided on an adhesive, and over such layer there is provided a second bituminous waterproof coating in which is embedded crushed mineral grit. In patent No. 2,047,471, it is stated that—

" * * * The use of non-mineral surfacing material between the first and second layers of waterproofing material, such as asphalt, results in a stronger and more durable bond between these layers, particularly as compared with sidings having a mineral grit layer between the coating layers. I have found that a firm bond results between the asphalt and intermediate coke layers. This may be attributed to a large extent to the fact that the coating material penetrates and becomes firmly anchored and embedded in the numerous pores and crevices in the coke particles.

\* \* \* \* \*

"In some cases it may be desirable to surface the first coating on the top side of

the sheet entirely with non-mineral solid material such as ground coke, sawdust, wood flour, ground cork, ground hard rubber, bone, charcoal, vegetable carbon, etc. The tab portions are then given a second coating of waterproofing composition and a surfacing of mineral granules."

The patent to Harris discloses a saturated felt base to which is applied an asphalt layer. A layer of granular or flaky material, such as natural slate granules, or granulated cork, is applied to the exposed surface of the asphalt coating. The coating thus surfaced is then furrowed, and a second coating of asphalt and a second coating of granular material is applied. The material thus formed is passed over cooling drums where sufficient pressure is applied to the sheet to effect a bonding or keying together of the two asphalt coatings.

The patent to Harshberger discloses a roofing material comprising a bituminous saturated felt provided with an asphalt coating to which has been applied, by pressing or otherwise, material, such as metal flakes; over this granular layer there is a further asphalt layer to which is applied a granular coating.

As stated in appellants' brief, the sole issue before us is whether the difference in size between the cork particles disclosed by appellants and those disclosed in the references involves invention. In other words, does the description of the particles as being of substantial size, as stated in some of the claims, and as of a size which will not pass through a "thirty-five (35) mesh screen," as set forth in other claims, sufficiently distinguish the claims from the disclosures of the cited prior art to render them allowable.

The examiner, in his statement to the board, said:

"Applicants stress in particular the limitation that the particles are of 'substantial size'. In the references these particles are shown as being of substantial size. This term in itself is not definite since fine particles are of substantial size relative to the size of particules found in a powdered mass. Furthermore, particles 78 of Miller 2,047,741, 68 of Miller 2,047,742, 12 of Harris and the granular particles of Harshberger applied to the first asphalt coating are definitely of substantial size. These particles must inherently form a thermal insulating layer.

\* \* \* \* \*

"Claims 11, 12, and 13 differ over claims 4, 8, and 1, respectively, by defining the size of the cork granules as not passing through a thirty-five mesh screen. No particular size cork particles are defined in the references although Harris distinctly calls for 'granular cork' and shows it as such. Since the properties of cork as an insulator are old and well known, and since ground or granular cork in roofing material is fully disclosed by Harris and Miller, it is obvious that it is simply a matter of degree whether large or small cork particles are employed. The advantages of large particles over small are predictable and it involves nothing more than an unpatentable variation to substitute large particles for smaller ones. Nothing critical is seen in employing cork particles which will not pass a thirty-five mesh screen."

The Board of Appeals in its decision stated:

"It appears clear upon consideration of the citations that the employment of cork granules is well known in preparing roofing shingles. Applicants' claims are, however, limited to the particles being of substantial size or specifically as in claims 11, 12 and 13, a size which will not pass through a thirty-five mesh screen.

"After careful consideration, we are in agreement with the examiner's holding that the term 'substantial size' is not definite. It is merely a general comparative expression in indicating absolute size and hence variable depending upon its particular association. However, in the present situation the particles of each of the citations are considered to be within such broad descriptive term. It appears that the particle size in the citations may even be the same as those named by applicants, namely, a 35 mesh since 1/35th of an inch would be quite a small particle of cork. We must accordingly agree with the examiner's conclusions that no invention applies to the matter of size of the cork granules over the state of the art. Further, if not considered directly anticipated in respect to claims 11, 12 and 13, the difference in size is believed only a matter of obvious choice and degree. We regard the matter of being a good heat insulator to be inherent of cork particles regardless of size and hence satisfied by the citations."

We are in agreement with the conclusion reached by the Patent Office tribunals and the reasons given therefor.

Although appellants' application states that the minimum size of particles of cork, viz., those which will not pass through a "thirty-five (35) mesh screen," is critical, no reason is given in their application for such statement, and there is nothing in the record to substantiate their claim that the size of the cork particles is critical; that is, that particles which will not pass through a "thirty-five (35) mesh screen," such as used by appellants, will produce a result different in kind from particles that will pass through a "thirty-five (35) mesh screen.".

As observed by the Solicitor for the Patent Office in his brief—"* * * A 35-mesh screen contains 35 openings to the linear inch and, since the wires of the screen occupy a considerable portion of the space, it is evident that the actual openings must be materially less than 0.03 inch on each side. Accordingly, the statement that a particle will not pass a 35-mesh screen merely means that it has at least one dimension which is approximately 0.03 inch or larger. Such particles could be quite small and might properly be referred to as grains or granules."

Although it may be true that granular particles much smaller than those which will not pass through a "thirty-five (35) mesh screen" will be filled with the coating material, thus materially lessening the thermal insulating properties of the shingle, we find nothing in the record to indicate that granules or particles which, let us say, will not pass through a 36- or 37-mesh screen but which will pass through a "thirty-five (35) mesh screen" will not possess the same properties, though perhaps in a less degree than those which will not pass through a "thirty-five (35) mesh screen." .

Appellants have cited several cases in which it was held that the expression "grains" or "granules of substantial size" in a claim sufficiently distinguished the composition claimed from the disclosures of the prior art.

Of course, the term "of substantial size" may be sufficiently definite where the use of granules or particles of a substantial size produces a result different in kind from that which results from the use of finely divided or powdered material, but, as hereinbefore noted, some of the references refer to the material as being merely ground, which grinding may or may not reduce the material to a powdered form. It is a matter of common knowledge that coffee is often coarsely ground, leaving granules of substantial size, and that sawdust, referred to in some of the references as a granular material which may be employed, varies from a fine powdery material to particles of substantial size.

Appellants also cite the decision of the Board of Appeals in the case of Ex parte Lee, 33 U.S.P.Q. 395, where it was held that a claim embracing particles of substantial size was held allowable over the disclosure of the prior art where the material was "ground substantially to a powder."

In the case at bar, the Miller patent No. 2,047,741 says nothing about the material being ground "substantially to a powder," but only that the material is ground. Furthermore, it is elementary that the allowance of claims by the Patent Office in one case has no relevancy in the consideration of the question of the patentability of claims in another case.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.