Application of SELMI et al.
Patent Appeal No. 5161.

Court of Customs and Patent Appeals.
June 11, 1946.

Justin W. Macklin, of Washington, D. C. (James J. Shanley, of Detroit, Mich., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in his rejection of claims 5 to 17, inclusive, and 19 in appellants' application for a patent for alleged "new and useful improvements in Alloy Steel." Claims 18, 20, 21, and 22 were allowed.

Claims 5 to 12, inclusive, were rejected as unpatentable over the prior art; claims 13 to 17, inclusive, copied from the patent to Fleischmann, No. 2,332,441, for the purpose of interference, were rejected for lack of sufficient disclosure; and claims 14 and 19 were "considered unpatentable in the limit imposed upon the amount of carbide-forming elements in the alloy."

The references are—

Kinzel, 2,114,802, Apr. 19, 1938;
Kinzel, 2,152,434, Mar. 28, 1939.

Claims 5, 13, and 19, which define the involved composition by its properties, its ingredients and the percentages thereof, are illustrative. They read—

"5. A fine grained high tensile low alloy steel having good welding characteristics and high resistance to strain aging and blue brittleness consisting of carbon .08 to .17%, manganese .50 to .75%, silicon .60 to .90%, chromium .30 to .65%, a maximum of .05% phosphorus, a maximum of .05% sulphur, .06 to .15% zirconium, the balance being substantially all iron and incidental impurities."

"13. A case carburized steel article formed from chromium carburizing steel containing as essential alloying elements, 0.1 to about 0.3 per cent of carbon, from about 0.5 to about 0.75 per cent of chromium, about 0.6 to about 0.9 per cent of silicon, and substantially no nickel, and the remainder iron together with impurities and elements in amounts which do not adversely affect the carburizing characteristics of the steel, and characterized by the carburized and hardened case being resistant to spalling and low in or substantially free from massive carbides."

"19. A case carburized steel article formed from chromium carburizing steel containing as essential alloying elements from about 0.1 to about 0.3 per cent of carbon, at least one carbide-forming element including at least about 0.5 per cent of chromium, the sum of said carbide-forming elements aggregating up to 2.55 per cent and about 0.6 to about 0.9 per cent of silicon, and .06 to .20 per cent of zirconium, and the remainder iron together with impurities and elements in amounts which do not adversely affect the carburizing characteristics of the steel, and characterized by its carburized and hardened case being resistant to spalling, and low in or substantially free from massive carbides."

The invention relates to a low alloy steel. The appealed claims describe the composition and as explained in the "authorized" literature submitted by appellants, "It is designed chemically to give the maximum benefits to be derived from alloying elements while holding to a minimum the undesirable features which accompany some of these elements when used in a steel designed primarily for structural purposes."

Except for their claims, the patents to Kinzel are substantially identical. It is not disputed that they disclose wider ranges of the elements also disclosed by appellants. Appellants contend, however, that the patents to Kinzel are for a different kind of steel and that appellants' ranges are narrower than Kinzel and teach "new balances and controls for new results."

Although the patents to Kinzel disclose a composition designed for case hardening by nitrification, while appellants' composition is particularly designed for case hardening by a carburizing compound, appellants' contention that the patents may not be considered as appropriate references is without merit.

Appellants' claims limited to "A case carburized steel article formed from chromium carburizing steel * * * and characterized by the carburized and hardened case being resistant to spalling and low in or substantially free from massive carbides" have been allowed. One of such claims, No. 21, is limited to "A nickel-free carburized steel article" and in claim

20, "A chromium-containing carburized steel article" is further characterized by "high tensile strength in the core as the result of heat treatment."

Moreover, the record shows that the claims rejected as lacking invention over the art of record, are claims that are not definitely limited in substance to the carburizing feature in the treatment of the steel, nor to an article of carburized steel, but to the alloy per se. The distinction between an article of steel treated by nitrification and one treated by a carburizing compound is accordingly eliminated insofar as such claims are concerned. It is our opinion therefore that the disclosures of the cited references are applicable to the case at bar.

In addition to the 85% or more of iron disclosed in his composition, the alloying elements described and claimed by Kinzel include specific and essential proportions of chromium, manganese, silicon, and zirconium. Furthermore, "other nonessential elements may be present." Kinzel also discloses that "The presence of some carbon is commercially unavoidable" and "is usually present in amounts of about 0.10% to 0.3%." The ranges of elements defined in the rejected claims as hereinbefore noted are all included in substantial proportions within the foregoing ranges disclosed by Kinzel. The question presented here is whether appellants' selected ranges differ from the ranges of the art of record so as to effect an unexpected result.

██ The point or range alleged to be critical must correspond to a physical phenomenon and on that basis appellants have the burden of proving that they have invented a new steel having characteristics or qualities of utility that are new and materially different from the steel disclosed by the art of record. See Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 329, 65 S.Ct. 647, 89 L.Ed. 973; In re Gillett, 133 F.2d 910. 30 C.C.P.A., Patents, 900.

Appellants contend that they teach new balances and controls for new results over Kinzel. That point was aggressively and earnestly argued and reargued in detail during the prosecution of appellants' application in the tribunals of the Patent Office. Affidavits and advertising material, "authorized for what it said," were submitted by appellants in support of their position following an early rejection by the examiner on the ground that "Applicant has failed to demonstrate that the steels defined by the claims at bar possess any qualities not also possesssed by the Kinzel steels."

██ The critical difference alleged to exist between the alloy steels claimed by appellants and those of the cited art of record must be established by actual proof. The rule applicable here was stated as follows by this court in the case of In re Swenson et al., 132 F.2d 1020, 1022, 30 C.C.P.A., Patents, 809:

"* * * It was held by the tribunals below that there is nothing in the specification to show that the claimed ratios are critical. While it appears in the application that the ranges claimed constitute 'a very novel feature of our invention' such statement does not amount to a showing that the ranges existing in the specific ratios of those claims are critical. The mere statement by the appellants that such statement is a measure of critical limitations in the absence of any further statement in the specification or actual showing of reasons why they should be considered as such cannot be accepted as proof that such ratios are in fact critical. In re Greider et al., 129 F.2d 568, 29 C.C.P.A., Patents, 1079".

We have examined appellants' specification as well as the affidavits and the advertising material submitted in the record and find nothing therein that establishes appellants' contention in regard to criticality.

██ It is elemental, and the authorities hereinbefore cited are to the effect, that a mere difference in proportion of the constituents of a composition, even though a better result may be attained, does not entitle an applicant to a patent where the result differs from those of the prior art only in a matter of degree. While it is urged by appellants that the proportions stated are critical, it appears otherwise

from the record, and the Board of Appeals correctly held that the claims in question defined no composition patentable over Kinzel.

Claims 13 to 17, inclusive, presented for the express purpose of provoking an interference with Fleischmann, were rejected for lack of sufficient disclosure in claiming an alloy which does not include zirconium. The patent to Fleischmann issued on an application that was copending with appellants' present application, and appellants urge that the two applications disclosed substantially the same subject matter. The record shows and it is not disputed that Fleischmann does not specifically recite zirconium as an essential ingredient. Appellants contend, however, that their "disclosure is a proper basis for claiming an alloy steel without naming zirconium."

The Board of Appeals in affirming the decision of the examiner stated:

"The rejection here is based on the proposition that the present application contains no basis for claims not reciting zirconium because the entire specification and original claims are concerned with steels in which zirconium is an essential ingredient and appellants did not contemplate its omission or even hint that it might be omitted."

Appellants' original claims, as hereinbefore noted, were limited to alloys including zirconium. In describing their invention appellants stated:

"* * * Basically it is a low alloy steel, attaining high qualities and in which valuable alloying elements, and particularly those of present strategic importance, such as silicon, chromium and zirconium, are held to a minimum.

*  *  *  *  *

"The steel in addition to iron, contains the following elements intended in practice to be within the ranges specified: * * * % Zirconium .06— .20 * * *."

Among the remarks submitted in support of various amendments, appellants further stated:

"For a time the supply of zirconium raised a serious question because sand constituting a large source used in producing ferro-silicon zirconium was shipped from India. * * *

*  *  *  *  *

"The zirconium limit of one half of the .30% suggested by Kinzel is necessary because weldability may be adversely affected with certain equipment causing reaction pitting and general difficulty in steel making. On the other hand the minimum is given to insure the fine grain or high grain coarsening temperature disclosed and claimed and to contribute to freedom from strain aging."

In appellants' affidavit to prove criticality, they pointed out also that Kinzel "recommends from .1 to .3 zirconium," while "In the applicants' narrower ranges much smaller amounts of zirconium may be used."

█ The reasonable inference to be drawn from the facts hereinbefore related is that appellants' disclosure contains no teaching as to an alloy that does not contain zirconium as as essential ingredient. Therefore the disclosure forms no basis, as correctly decided by the examiner and the Board of Appeals, for claiming an alloy that does not include zirconium.

Claims 14 and 19 are also copied in part from the patent to Fleischmann. In their reasons of appeal, appellants contend that—

"5. The Board of Appeals erred in holding claims 14 and 19 lack identity with the original disclosure; and in holding them unpatentable in the limit imposed upon the amount of carbide forming elements in the alloy; and in affirming the Examiner in his position that there is no basis for such limitations in the application as filed."

The two claims under consideration are limited to "at least one carbide-forming element including at least about 0.5 per cent of chromium, the sum of said carbide-forming elements being not over about 3.75 per cent, and about 0.6 to about 0.9 per cent of silicon," in claim 14; and "aggregating up to 2.55 per cent and about 0.6 to about 0.9 per cent of silicon, and .06 to .20 per cent of zirconium," in claim 19.

The Board of Appeals in its rejection of claims 14 and 19 stated that "No carbide-forming element other than chromium is found in the specification as filed." On that point, appellants contend that "the Board expresses a clear mistake of fact." In support of their position, appellants submit here a sheet containing certain data "copied from page 38 of the U.S.S. Carilloy Steels booklet." That sheet does not appear to have been introduced in evidence nor to have been considered by the board.

■ The paper in question was submitted with appellants' petition to the board for the reconsideration of its decision. Before action by the board was taken on the petition, however, appellants filed their appeal and the Board of Appeals transferred jurisdiction of the cause to this court. Accordingly, the data in question is not properly before the court and may not now be considered.

■ Moreover, if appellants wished to object to the board's statement and to question the correctness of the facts contained therein, they should have requested the board to cite its authority for the statement. If the cited authority was based upon facts within the personal knowledge of the board, appellants should have proceeded under rules 66 and 76 of the Patent Office, 35 U.S.C.A.Appendix, and called for the affidavit of the board. Appellants would then have been in a position to contradict or explain the board's statement.

■ No such request was made by appellants, however, and they may not be heard to contend here that a carbide-forming element other than chromium is found in the specification as filed. The statement of the board must be accepted therefore as correct. In re Lewis, 96 F.2d 1009, 25 C.C.P.A., Patents, 1273.

■ It is noted, moreover, that claim 14 fixes the upper limit of the carbide-forming elements as aggregating up to 3.75 per cent and claim 19 at 2.55 per cent. Silicon is recited in the claims as distinct from and in addition to the carbide-forming elements and therefore it cannot be included as one of them. As correctly noted by the examiner, "Appellants argue that the per cent limit given is the sum of these elements given in the specification, but they do not point out how they compute the percentage or where the limitation may be found." It is our opinion therefore that the claims in question were properly rejected.

Appellants devote a great portion of their argument here to the alleged error of the board in failing to hold that an interference should be declared between their present application and the patent to Fleischmann and that in this proceeding the court should direct that such an interference be declared.

■ However, since the claims copied from the patent do not read on appellants' disclosure, the failure of the tribunals of the Patent Office to declare an interference cannot be remedied in this proceeding, even if the patent to Fleischmann were issued through inadvertence over the disclosures of Kinzel as stated by the examiner. See In re Fischer, 47 F.2d 794, 18 C.C.P.A., Patents, 1076.

In view of our conclusion no useful purpose would be served in stating and deciding additional points presented in the argument of appellants, and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.

GARRETT, Presiding Judge, sat during the arguments of this case, but because of illness took no part in its consideration or in the decision.