39 C.C.P.A. (Patents)
## Application of MADSEN et al.
### Patent Appeal No. 5901.

United States Court of Customs
and Patent Appeals.
June 24, 1952.

Henry E. Rockwell, New Haven, Conn. (Edwin R. Hutchinson, Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in his rejection of claims 5, 48–52 in appellants' application for a patent for alleged new and useful improvements in nursing bottles.

No claims were allowed and all of them were rejected as lacking invention over prior art disclosed in the following references: Tatum, 712,157, Oct. 28, 1902; Gallagher, 805,641, Nov. 28, 1905; Hagerty, 1,429,585, Sept. 19, 1922; Ware, 1,510,571, Oct. 7, 1924; Kushner, 1,623,544, Apr. 5, 1927; Dishart, 1,716,262, June 4, 1929; Burtchaell, 1,749,313, Mar. 4, 1930; Corsi et al., 2,090,749, Aug. 24, 1937; Kurkjian, 2,093,130, Sept. 14, 1937; Kurkjian, 2,093,730, Sept. 21, 1937.

The subject matter in issue involves a nursing outfit for an infant and comprises a relatively wide-mouth bottle and a means for securing thereto a nipple which has a base flange with a push-on cap to protect the nipple.

Claims 5, 48, 49, and 50, drawn to a combination, include the nipple, the retaining ring, and the protective cap. Claims 51 and 52, drawn to a subcombination, disclose a novel nipple structure but do not include the protective cap. Claims 5 and 52 are illustrative:

"5. In a nursing bottle, the combination of a bottle having a mouth, a nursing nipple, a retaining screw ring holding the nipple over the bottle mouth, and a protective cap of the push-on type extending over the nipple and over the retaining ring, said cap having a resilient rubber portion engaged with the ring to seal off the space within the cap, said resilient portion having a shoulder engaged with the lower edge of the ring to secure the cap in place, said bottle having an outstanding shoulder with an upper face spaced from the lower edge of the ring when the ring is screwed up on the bottle, and the shoulder part of the cap being disposed in the space thus provided, the cap being so dimensioned that when the cap is so secured said cap assumes a predetermined axial position with respect to the nipple structure."

"52. A nursing nipple having a body, a base flange integral with the body at the lower portion of the latter, and outer shouldered portion of greater diameter than the body integral with the body above the base flange and disposed at the side of the body and having a round side surface, lugs formed integrally with the body and with said shouldered portion extending in a lateral and radially outward direction and adapted to overlie the upper surface of a retaining ring having an inner surface engaging said round side surface, and air-inlet means associated with the base portion of the nipple in the interval between certain of said lugs, including a slitted elastic protuberance extending downwardly from the base so as to be disposed within the bottle mouth, said protuberance having its slit in communication with an air-inlet passage extending upwardly through the base and through said shoulder portion and having its upper end at the top of said shouldered portion inwardly of said ring."

The examiner, the board, and the Solicitor for the Patent Office have each in turn referred to the brief of appellants for details of the claimed structure and the relationship of its parts as shown in the schematic drawings which accompanied the filing of appellants' specification. Accordingly, we reproduce the description of the claimed articles set forth in appellants' brief, numerical references to the drawings being here omitted:

"* * * applicants provide a bottle, a nipple applied to the bottle by means of a retaining screw ring, and a pro-

tective cap of the push-on type made of rubber or the like. This cap has adjacent the lower end an inwardly projecting ledge or shoulder adapted to engage the lower edge of the screw ring so as to interlock with the screw ring when the cap is pushed over the ring. The nipple has a base flange seating upon the mouth of the bottle. The screw ring is preferably made of plastic material, and is provided with interior screw threads engageable with the screw threads on the bottle. The screw ring has a retaining flange at the upper part thereof overlying the flange of the nipple, so that as the screw ring is screwed into place on the bottle the nipple is firmly held in position on the bottle mouth.

"The protective cap has the profile shown in the drawings. The lower open mouth portion of the cap has a downward and outward flare below the inwardly projecting shoulder. The upper part of the cap is dome shaped, and at the summit of the cap the liner provided in the upper portion of the cap has a lower convex surface which, when the cap is in the predetermined axial position above mentioned, presses against the upper end of the nipple (which is flat) and depresses it somewhat so as to provide in all cases effective contact of the parts with each other with just the right amount of pressure to seal the nipple summit."

■ No single reference anticipates the elements set forth in the appealed claims. More than one reference may properly be considered, however, in determining the patentability of claims, and the collective references show a nursing unit which includes a baby's bottle, a nipple, and a protective cap for a nipple.

The patents to Kurkjian disclose a venting valve system for nipples and a nursing unit which has for its principal object the production of a resilient flanged nipple secured to the mouth of the bottle by a retaining ring. The patent to Tatum was issued in 1902 for a nipple adapted to give a firm grip on a nursing bottle so as to effect elimination of foreign matter left in the nipple after its use by an infant.

The respective patents to Gallagher and Ware provide for a rubber nipple with air inlets which will not collapse or be drawn by outside air pressure. The nipple is soft and pliable and detachably secured to the neck or mouth of a nursing bottle. The patents to Hagerty and Kushner disclose screw-on protective caps engaged with nursing bottles and engaging portions of the nipple.

The respective patents to Dishart and Burtchaell disclose sanitary protective caps. The latter is preferably made of metal, the former of paper or "a similar material." The patent to Corsi et al. discloses a sanitary cap screw-threaded to the bottle. The cap is made of metal or "any suitable plastic material." It prevents accidental breakage and leakage.

The tribunals of the Patent Office rejected claims 5, 48, 49, and 50 as failing to define invention over either of the patents to Kurkjian, in view of the disclosure of either Dishart or Burtchaell.

Claims 51 and 52 were rejected by the examiner as unpatentable over the disclosure of the patent to Kurkjian, No. 2,093,730, in view of Dishart, while the board rejected those two claims on the disclosure of Kurkjian, No. 2,093,730, with the statement that the air-inlet passage defined by claim 52 added nothing further patentable to that claim in view of the disclosures of Ware and Gallagher.

The board in its decision made no reference whatever to the cited reference of the patent to Hagerty. The board held, however, there was no basis in appellants' original specification for the final limitation of claim 48 which, with respect to the position of the cap in the nipple structure, provides that "the cap under tension in an axial direction, exerts a predetermined sealing pressure against the summit of the nipple."

■■ The point in question is directed to the patentability of the claim and appellants should have requested the board under rule 132, formerly rule 76, of the

Rules of Practice of the Patent Office, 35 U.S.C.A. Appendix, to cite authority for the involved statement of fact. In re Selmi, 156 F.2d 96, 33 C.C.P.A., Patents, 1187. The board's criticism cannot be dismissed here as invalid by reason of the statement in appellants' brief that since the nipple is made of rubber, with the upper end thereof depressed to the position shown in the drawings, "there is obviously some tension in the cap in an axial direction".

For the reason just stated, the board's rejection of claim 48 will be sustained. However, we cannot approve of the action of the tribunals of the Patent Office with respect to the rejection of the remainder of the claims.

The board in its decision has stated that appellants' device shows "slight variations" over the cited references, all of which date back from fifteen to fifty years, and the Solicitor for the Patent Office concedes in his brief that appellants may have made a distinct and advantageous advance in the art.

The appellants it is true have embraced in their structure various features of the numerous references of record but they have incorporated them in the new article in such a way and with such modifications as to produce a new and useful result. The instant art, according to the record, is highly specialized and developed and yet no device of the prior art has produced the beneficial results obtained by the appellants in this case. We are convinced that their disclosure involved invention and their claims, other than claim 48, which was defectively drawn, should have been allowed.

We are fortified in this conclusion not only by the affidavits of record showing the superiority of the subject matter defined by the claims in question but also by the wide commercial success which for the three years from 1947 to 1950 resulted in the sale of more than 2½ million units of the claimed article. In re Holt, 162 F.2d 472, 34 C.C.P.A. (Patents) 1129; Wahl Clipper Corporation v. Andis Clipper Co., 7 Cir., 66 F.2d 162, 165. In the case last cited, Judge Alschuler made the following pertinent comment:

"* * * Instead of comparing the mental activities (and eccentricities) of genius and the 'mechanic skilled in the art,' it would seem safer and more accurate to study the product itself and, if possible, ascertain the verdict of the public—the ultimate beneficiary of the contribution. In most instances, the judgment of those who pay their money to secure the benefits of the patented article is truer and better than the opinion of experts or the speculations of an arbitrator."

Accordingly, the decision of the Board of Appeals is affirmed as to claim 48 and reversed as to claims 5, 49, 50, 51, and 52.

Modified.

JACKSON, J., retired, recalled to participate herein.