**Arthur JOHNSEN, Jr., and George E. Kampschaefer, Jr., Plaintiffs,**

v.

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

**Civ. A. No. 1374–64.**

United States District Court
District of Columbia.

March 22, 1966.

Felix M. deRosa, Watson, Cole, Grindle & Watson, Washington, D. C., Gibson Yungblut, Yungblut, Melville, Strasser & Foster, Cincinnati, Ohio, for plaintiffs.

Raymond E. Martin, Washington, D. C., for defendant.

JACKSON, District Judge.

This is a civil action to obtain a patent under 35 U.S.C. § 145. Upon consideration of all the evidence in this case, as well as arguments of counsel, the Court renders judgment for plaintiffs and against defendant. It is worthy of mention that the well-prepared charts discussed by plaintiffs' witnesses at the trial and introduced in evidence as physical exhibits were quite helpful in enabling the Court to understand the essence of plaintiffs' invention and the significance of their contribution to the art of metallurgy. Pursuant to F.R.Civ.P. Rule 52 (a), the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. This is a Civil Action under 35 U.S.C. § 145 in which plaintiffs, Arthur M. Johnsen, Jr. and George E. Kampschaefer, Jr. seek to have the Court authorize the issuance of a patent containing claims 1 to 8 inclusive of their application Serial No. 67,662, filed November 7, 1960, and entitled "LOW CARBON, HIGH STRENGTH ALLOY STEEL."

2. The invention relates to nickel-free, low carbon, high strength alloy steels which are produced in the form of heavy plates at least about one-quarter inch in thickness. These plates are used in heavy constructions, including pressure vessels, by cutting the plates to desired shapes and welding them together.

3. When a low carbon, high strength alloy steel is cooled from a high temperature at which it is in the austenitic condition, it will transform into phases either martensitic or bainitic or a mixture of the two. The prior art understanding has hitherto been that the martensitic condition was the hardest and strongest form of any given alloy, that the mixed martensitic and bainitic condition was softer and weaker, and that the bainitic condition was softest and weakest. Whether an alloy upon cooling from the austenitic condition will assume the martensitic, mixed, or bainitic conditions is dependent upon the rate of cooling or quenching of the alloy, martensite being formed at relatively rapid cooling rates, while slower cooling rates will produce either a mixed condition or, as the cooling rate is further diminished, a bainitic condition.

4. There is a limit to the thickness of plates which may be formed in the all-martensitic condition, because as the plate thickness increases, the interior cooling rate diminishes under any given quenching conditions.

5. Tempering involves reheating the quenched plates to a temperature below the austenitizing temperature and holding the plates at that temperature for a given length of time. Tempering has the effect of softening the martensitic, mixed, and bainitic phases of the alloy; but it is valuable in that it toughens the metal. The low carbon high strength alloy steels are generally sold in the quenched and tempered condition.

6. The Boyce et al. patent No. 2,858,-206, cited against plaintiffs' application, is concerned with the manufacture of plates of nickel-free, low carbon, high strength alloy steel in the quenched and tempered, all-martensitic condition. As a consequence, plates thicker than about one inch are not contemplated or taught by the patent since such thicker plates could not be cooled rapidly enough to attain an all-martensitic condition.

7. Even if plates are produced in the all-martensitic condition, the production of structures with such plates by welding can and does produce some bainite in them because the metal adjacent to the weld is heated above the austenitizing temperature and the subsequent cooling is uncontrolled.

8. As far as the record in this case shows, plaintiffs succeeded for the first time in the history of the art in producing a low carbon, high strength alloy steel having a bainitic strength substantially equal to its martensitic strength. This meant that plaintiffs' assignee could produce and sell plates of their alloy that were not limited to a thickness which could be quenched rapidly enough to produce an essentially all-martensitic structure. Plaintiffs' assignee can and does make and sell plates in all thicknesses up to and beyond four inches.

9. Plaintiffs' unique and unexpected effect in a low carbon, high strength alloy steel is an inherently useful property and flows from the chemistry or formula of the steel itself. The formulae of plaintiffs' alloy steel and of the alloy steel of the reference Boyce et al. are as follows:

|  | Boyce et al. | Plaintiffs |
|---|---|---|
| Carbon | .12 to .21% | .08 to .21% |
| Manganese | .50 to 1.00% | .20 to .70% |
| Phosphorus | .04% maximum | .04% maximum |
| Sulfur | .04% maximum | .05% maximum |
| Silicon | .10 to .75% | .15 to 1.0% |
| Chromium | .30 to .75% | 1.0 to 2.5% |
| Molybdenum | .15 to .45% | .40 to 1.0% |
| Boron | .0005 to .005% | .0015 to .01% |
| Vanadium | .03 to .10% | .03 to .15% |
| Titanium | .01 to .03% | .03 to .15% |
| Copper | 0 to .50% | .20 to .50% (optional) |

The balance of the steels being substantially all iron with commercial impurities.

10. (a) Plaintiffs employ an amount of chromium as an alloying element which is entirely outside of any range set forth in the Boyce et al. patent.

(b) Plaintiffs employ a range of content of the element manganese which is generally unlike the range of this element set forth in the Boyce et al. patent and amounts to the use of a lesser quantity of manganese. Boyce et al. preferred manganese contents of at least 0.60%

(c) Plaintiffs employ a range of content of the alloying element molybdenum which is quite unlike the range given for this element in the Boyce et al. patent, and amounts to a substantial increase in the quantity of molybdenum. Boyce et al. preferred molybdenum contents in the lowest third of their disclosed range, i. e. 0.15 to 0.25%.

11. There is no question of anticipation under 35 U.S.C. § 102 in this case. The Board of Appeals reversed the Examiner's holding that the maximum chromium content broadly taught by Boyce et al. (0.75%) was essentially the same as the minimum content (1.0%) taught by plaintiffs. Boyce et al. also preferred chromium contents no greater than 0.60%, and the chromium percentages in the two reference examples are only 0.37 and 0.46%.

12. It stands proved in this record that plaintiffs' alloy possesses the inherent and unexpected beneficial properties

of hardness and strength in the mixed and bainitic conditions substantially the same as the hardness and strength in the martensitic condition, whereas the Boyce et al. alloy decreases rapidly in hardness and strength in the mixed condition and continues to decrease further in the bainitic condition. A weld formed between plates made of plaintiffs' alloy is characterized by maintenance of hardness and strength across the weld and in the heat affected zones of the base metal adjacent to the weld, whereas a weld formed under identical conditions between plates made of the Boyce et al. alloy is characterized by a marked decrease in hardness and strength in zones of the base metal adjacent to the line of weld.

13. The Patent Office Examiner and the Board of Appeals expressed the opinion that plaintiffs should have compared their alloy containing their stated minimum of chromium (1.0%) with a Boyce et al. alloy containing the maximum chromium level (0.75%) generally taught in the patent. When this was done, however, the Boyce et al. alloy still showed a marked decrease in hardness and strength in the bainitic condition and in the ratio between the martensitic and bainitic strengths of the Boyce et al. alloy.

14. The Examiner and the Board of Appeals erroneously concluded that the only essential difference between plaintiffs' alloy and the alloy of the Boyce et al. patent was in the chromium contents of the two alloys; but it has been shown that plaintiffs' alloy exhibits the inherently useful, unique and unexpected beneficial property of a bainitic strength substantially equivalent to its martensitic strength, where as the Boyce et al. alloy does not possess this property; and Boyce et al. consequently had deliberately avoided the bainitic condition for their steel.

15. The Examiner and the Board of Appeals erroneously held that more chromium could obviously be added to the Boyce et al. alloy without resulting in a patentable invention, because chro-

mium is known to be a hardenability agent and carbide former. To establish this contention, the Solicitor for the Patent Office introduced a table from the 1948 Edition of the "Metals Handbook" in evidence at the trial. The facts are these:

(a) The activity of an element as a carbide former is not necessarily an index of its activity as a hardenability agent.

(b) The Examiner and the Board confused "hardness" and "hardenability". Hardenability is a term used to denote the effect of an alloying element in determining the slowest rate of cooling at which martensite will still form. It has nothing to do with the hardness and strength characteristics of the alloy in the mixed and bainitic conditions.

(c) The martensitic hardness of steel is controlled by its carbon content.

(d) The hardenability of the Boyce et al. alloy is substantially the same as the hardenability of plaintiffs' alloy.

(e) The martensitic hardness of the Boyce et al. alloy is even slightly greater than the martensitic hardness of plaintiffs' alloy; but the martensitic hardness and strength of plaintiffs' alloy is maintained in the mixed and bainitic conditions whereas the martensitic hardness and strength of the Boyce et al. alloy is not maintained.

(f) Plaintiffs' unique and unexpected beneficial result is not due to an increase in the formation of martensite, but rather is due to a bainitic strength substantially equal to the martensitic strength of plaintiffs' alloy.

(g) Plaintiffs' unique effect is not derived from hardenability. There is nothing in defendant's Exhibit 2 which teaches anything concerning the effect of any of the alloying elements set forth therein on the bainitic hardness and strength of an alloy.

(h) Plaintiffs' unique and unexpected result is due to a combination of the effects of chromium, molybdenum and manganese contents within certain ranges, and the ranges set forth by plaintiffs in their application are critical.

16. The subject matter of Claims 1 to 8, considered as a whole, would not have been obvious, at the time plaintiffs made their invention, to a metallurgist of ordinary skill who had knowledge of the Boyce et al. patent.

## CONCLUSIONS OF LAW

1. Where a range of elements in an alloy steel is alleged to be critical, the patent applicants have the burden of actually proving that they invented new steel having beneficial properties that are new or materially different from those of the steel disclosed by the prior art of record; mere differences in proportions of alloying elements in the steel does not warrant issuance of a patent where the results of the allegedly critical differences in proportions differ from those of the prior art only in degree but not in kind. In re Selmi et al., 156 F.2d 96, 33 CCPA 1187 (1946).

2. Plaintiffs' Claims 1 to 8 inclusive are patentable over the prior art of record, especially the Boyce et al. patent, under 35 U.S.C. § 103.

3. Plaintiffs are entitled to a patent containing Claims 1 to 8 of their application Serial No. 67,662.